UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| Eleven 10 LLC, | ) | Case No. 1:21-cv-2207 |
| | ) | |
| Plaintiff, | ) | Judge Donald C. Nugent |
| | ) | |
| vs. | ) | |
| | ) | |
| Innovationly SK d.o.o., | ) | [PUBLIC VERSION] |
| dba Aid & Aim Tactical, | ) | |
| | ) | |
| Defendant. | ) | |

### Memorandum in Support of Eleven 10's Motion to De-Designate Certain Discovery Responses from "Attorneys' Eyes Only" to "Confidential"

Innovationly SK d.o.o., dba Aid & Aim Tactical, ("AAT") is infringing Eleven 10's trade dress rights by selling a copy of its popular hard-shell tourniquet case, called the RIGID TQ CASE®. In discovery, AAT has designated the following information "ATTORNEYS' EYES ONLY" ("AEO") under Protective Order: (i) the fact that AAT first obtained its accused cases from ███████████████████████, and (ii) AAT ███████████████████████████████████████████████████████ ███████████████████████████████████████████ By doing so, AAT is unilaterally blocking Eleven 10's principal from knowing these important and relevant facts. As explained more below, AAT cannot show that disclosing these facts under a lower "CONFIDENTIAL" designation would cause "significant harm … to the business or competitive position" of AAT. The Court should grant this motion accordingly.

### Background

Eleven 10 is a Westlake, Ohio company that develops, manufactures, and sells tactical gear. (Am. Compl. ¶ 5, 11.) Its founder is a former Marine in the 2d

Reconnaissance Battalion. He named his company "Eleven 10" after the November 10, 1775 birthday of the Marine Corps.

By at least 2011, Eleven 10 began developing a distinctive hard-shell tourniquet case. The idea was to make the product look cool so police and first responders would want to carry a potentially lifesaving tourniquet on their belts. Eleven 10 came to market with its current configuration of the case in 2015. (Am. Compl. ¶ 19.) Eleven 10's case, which it calls the *RIGID TQ Case*®, looks like this:



(*See* www.1110gear.com/rigid-tq-case/.) After the case took off in popularity, Chinese companies started selling counterfeit versions through resellers on Amazon and other e-commerce sites for half the price of Eleven 10's American-made product. (*See* Am. Compl. ¶ 3-4, 23-25.) This forced Eleven 10 to submit complaints to Amazon and to sue companies that refused to stop selling the counterfeits. This is one of those lawsuits.

AAT is a Slovenian company that is owned and operated by Davor Tadic. (*See* AAT Resp. to Interrog. 14.)[1] Tadic buys cheap copycat cases from a Chinese manufacturer at extremely low prices, and then resells them in the U.S. for profit on Amazon. (*See* AAT

---

[1] AAT's Interrogatory Responses are attached as Ex. A.

Resp. to Interrogs. 7 and 9.) Tadic has no employees, no manufacturing facility, and no apparent capital investments. (*See id.*) Tadic appears to operate his fully-online business from his house in Slovenia by computer. (*See id.*) A side-by-side comparison leaves no doubt that the AAT product is a copy of Eleven 10's product:



(*See* Am. Compl. ¶ 23.) In fact, in discovery, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*See* AAT Resp. to Interrog. 9.) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

███████████████████████████████████████████████████████████

████████████

In its interrogatory answers, AAT marked as AEO ████████████████

███████████████████████████████████████████████████████████

████████████ (*See* AAT Resp. to Interrog. 6 and 9.) Eleven 10 asked AAT to de-designate this information to CONFIDENTIAL under the Protective Order, the attorneys met-and-conferred by phone, and AAT has refused to de-designate it. Eleven 10 now moves the Court to do so.

**Law and Argument**

I. **The Protective Order**

Here, the Protective Order states that only the following may be marked AEO: "information protected from disclosure by statute or that should be protected from disclosure as trade secrets or other highly sensitive business or personal information, the disclosure of which is likely to cause significant harm to an individual or to the business or competitive position of the designating party." (Protective Order, ¶ 4, ECF #9.)

The AEO designation bars Eleven 10's principal from learning any information so marked. (*Id.* ¶ 6(b).) Whereas Eleven 10's principal can see CONFIDENTIAL information, but cannot use it for anything other than prosecuting this litigation. (*Id.* ¶ 6(a)(2).)

When, as here, a party challenges a designation, the objecting party may move the Court to "cancel or modify a designation," and the "burden of demonstrating the

---

[2] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████

CONFIDENTIAL or ATTORNEYS EYES ONLY nature of the information so designated shall at all times be and remain on the designating party." (*Id.* ¶ 9.) Thus, AAT has the burden to prove this challenged information is entitled to AEO protection.

**II.    AAT cannot meet its burden to show the information deserves the extreme AEO protection.**

AAT cannot show that the three bits of information that Eleven 10 seeks to de-designate will cause "significant harm" to the "business or competitive position of" AAT if provided to Eleven 10's principal under a CONFIDENTIAL designation.

First, disclosing to Eleven 10 that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ cannot possibly cause AAT competitive harm, let alone "significant harm." That is because (a) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and Eleven 10 uses only U.S. manufacturers for its plastic cases and brands its products as "PROUDLY MADE IN THE USA."

Second, disclosing the name of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ would cause no competitive harm because: (a) Eleven 10 would never buy product from that supplier because, ▮▮▮▮▮▮ it is an infringer of Eleven 10's trade dress rights, and it is a Chinese manufacturer; and (b) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

There is an additional reason why, ▮▮▮▮▮▮▮▮▮▮ there is no risk that Eleven 10 would start buying product from them if de-designation occurs. Eleven 10 merely seeks to have their names de-designated to CONFIDENTIAL. So the Protective Order would still bar Eleven 10 from using their names for business purposes, *i.e.* to start buying services or goods from them. (*See* Protective Order ¶ 6(a) (limiting use of CONFIDENTIAL information to "prosecution or defense of this action").) AAT has no evidence suggesting that Eleven 10 would violate the protective order to start buying goods or services from these companies, especially when they have infringed Eleven 10's rights and buying from China runs contra to Eleven 10's "MADE IN THE USA" values.

Third, AAT's explanation for how it arrived at the same case design as Eleven 10 is not deserving of AEO protection, but instead is highly relevant evidence that Eleven 10 is entitled to know to prosecute its case. Disclosing to Eleven 10 that AAT ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ would not cause substantial competitive harm because the names of the suppliers are not deserving of AEO protection as explained above. Thus, disclosing the fact that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ would not cause substantial competitive harm to AAT.

The Court should de-designate accordingly.

III. **Eleven 10 has a need for this relevant evidence.**

Although Eleven 10 need not show need for this information to obtain a de-designation, it does have a strong need for access to this information.

████████ Eleven 10 needs to know the ████████ to understand the specifics of its infringement case, AAT's willful infringement, and to respond to AAT's laches defense. As to infringement and willfulness, AAT did not independently conceive of the tourniquet case, but instead ████████████████████████████ ████████████████████████ and therefore that evidence strengthens Eleven 10's infringement and willfulness claims. When testifying to the jury, Eleven 10's principal should be able to testify about ████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████.

As to laches, AAT claims that Eleven 10 unreasonably delayed in bringing its suit against AAT. ████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████ Eleven 10's witness is entitled to know this fact when explaining at deposition and trial that its enforcement efforts were timely, diligent, and reasonable.

████████████████ Eleven 10 needs to know its name to decide whether to proceed against it in this action or a separate action. The information also is necessary as part of Eleven 10's overall enforcement efforts to stop the Chinese importation of these counterfeit cases. In future lawsuits, Eleven 10 may learn that ████████ is a supplier to a

---

[3] Eleven 10 also timely asserted its rights against AAT at least through Amazon complaints and correspondence direct with AAT.

future defendant or that the defendant copied a ▮▮▮▮▮▮▮▮. That information would not mean anything to Eleven 10 if it does not know that ▮▮▮▮▮▮ is or was AAT's supplier, hence it has a need to know. In the same way, if Eleven 10 had not previously sued ▮▮▮ it would not have known the importance of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Not only are these facts important for Eleven 10 to fairly prosecute its case, but it also needs to know them to assess the strength of its case when making decisions about what additional evidence it needs and what litigation strategies to employ in this case.

## Conclusion

The Court should grant this motion and de-designate the information as requested by Eleven 10.

Respectfully submitted,

Dated: August 25, 2022

   s/ Matthew J. Cavanagh
Matthew J. Cavanagh (OH 0079522)
McDonald Hopkins LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 | f 216.348.5474
mcavanagh@mcdonaldhopkins.com

*Counsel for Eleven 10 LLC*