**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Eleven 10 LLC, | ) | Case No. 1:21-cv-2207 |
| | ) | |
| Plaintiff, | ) | Judge Donald C. Nugent |
| | ) | |
| vs. | ) | |
| | ) | |
| Innovationly SK d.o.o., | ) | |
| dba Aid & Aim Tactical, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO DE-DESIGNATE CERTAIN DISCOVERY RESPONSES FROM "ATTORNEYS' EYES ONLY" TO "CONFIDENTIAL" AND IN SUPPORT OF CROSS-MOTION FOR CLARIFICATION AND A PROTECTIVE ORDER**

Plaintiff, Eleven 10 LLC, is attempting to gain a monopoly on the sale of a widely available style of injection-molded tourniquet case by asserting claims of trade dress infringement it knows or should know are not valid. Having failed to apply for a design patent on any of the multiple versions of cases it has produced over the years, knowing that the market is replete with competitors selling the same style of case, and having never even attempted to obtain registration of its purported trade dress with the USPTO, Plaintiff now relies on ill-founded accusations of intellectual property infringement to bully competitors, like Defendant, into exiting the market. Unlike others, however, Defendant has fought back.

Plaintiff now asks the court to provide it access to the identity of Defendant's supplier so it can attempt to end run this litigation by cutting off Defendant's supply of products. Defendant disclosed the identity of its supplier in reliance on the provisions of the Protective Order that restrict access of that information to Plaintiff's attorneys and prohibit them from using it for the

type of commercially damaging purpose Plaintiff now proposes. Plaintiff's motion seeks an unjust and unfairly prejudicial outcome and should be denied.

Because Plaintiff disputes that the Protective Order prohibits it from using protected information for the purposes of Plaintiff's enforcement activity, Defendant also cross-moves for clarification of the Protective Order or, in the alternative, for issuance of a separate protective order prohibiting such use.[1]

## **Background**

Defendant is a Slovenian company that sells its products exclusively on Amazon.com ("Amazon") under the trademark AID & AIM TACTICAL. *See* Declaration of Davor Tadic ("Tadic Decl.) ¶ 3. Defendant began selling an injection-molded tourniquet cases on Amazon late in 2019. *Id.* At that time, Defendant obtained its cases from a supplier that offered them online for wholesale purchase. *Id.* When Defendant entered the market, there were numerous other companies offering the same style of case to consumers on Amazon and elsewhere online. *Id.*

After a few months of selling the original case, Defendant worked with a new supplier to develop a custom-made case based on, though not copied from, the case from Defendant's original supplier. *See* Tadic Decl. ¶ 4. That case was and is exclusively supplied to Defendant. *Id.* ¶ 5. It is not, to Defendant's knowledge, sold anywhere else by anyone else. *Id.* The two cases currently sold by Defendant are pictured below to the right of the current version of Plaintiff's case that bears the universal first-aid symbol. *See id.* ¶ 6.

---

[1] Defendant has no objection to de-designating the identity of Defendant's original supplier and the fact that the product from the original supplier was used as a reference for Defendant's current product.

| PLAINTIFF'S<br>RIGID / ELEVEN 10<br>CASE | DEFENDANT'S<br>AID & AIM TACTICAL<br>CASES |
|---|---|



In addition to the obvious physical differences between Plaintiff's case and Defendant's cases, Defendant's cases are presented for sale only on Amazon under the AID & AIM TACTICAL trademark. *See* Tadic Decl. ¶¶ 3, 7. Plaintiff's products, on the other hand, are marketed under Plaintiff's trademarks and sold in packaging (pictured below) that, tellingly, almost entirely conceals the product.



3

Defendant strictly maintains the confidentiality of the identity of its supplier. *See* Tadic Decl. ¶ 8. Defendant developed its custom cases to provide customers with a better quality and better performing product. *Id.* If Defendant were to lose its supplier, it would result in severe financial and competitive harm to Defendant. *Id.* ¶¶ 8-12. Not only would Defendant suffer lost sales and goodwill from the disruption of its supply, but it would also have to incur the expense of securing a suitable new supplier. *Id.* The impact of losing the supplier would effectively shut down Defendant's business. *Id.*

Plaintiff seeks not only to be given access to the identity of Defendant's supplier but also to be permitted to use that information to take enforcement action that would likely result in the supplier severing its relationship with Defendant, which would destroy Defendant's business. *See* Tadic Decl. ¶ 12. Defendant vehemently opposes Plaintiff's requested relief.

## Argument

I. **The Court Should Clarify that the Protective Order Does Not Permit Use of Information Designated Thereunder for Enforcement Against Third Parties or to Add New Parties.**

Paragraphs 6(a) and 6(b) of the Protective Order state that "documents" designated "Confidential" or "Attorneys'-Eyes-Only" pursuant to the order "shall not be used for any purpose whatsoever other than the prosecution or defense of this action, and of any appeal thereof." *See also* Protective Order at ¶ 1 (defining "documents" to include all manner of information "produced, provided, or disclosed in the course of this action").

By the plain terms of the Protective Order, Plaintiff is prohibited from using the identity of Defendant's supplier to take enforcement action against the supplier. The language in the Protective Order prohibiting use for purposes other than "this action" is broad ("shall not be used for any purpose whatsoever"). That broad restrictive language is a reflection of the intent of the

4

order, which is to provide for the exchange of highly sensitive information in discovery while protecting against use of such information in a manner that could harm the disclosing party in ways not tied to the merits of the lawsuit.

In its brief, however, Plaintiff suggests that it is free to use Defendant's highly confidential information disclosed in discovery to take enforcement action against Defendant's supplier. That is plainly incorrect. Plaintiff more narrowly suggests that it could add the supplier as a party to this case without violating the Protective Order, presumably under the rationale that doing so would fall within the scope of the "prosecution of . . . this action." That interpretation is not consistent with the Protective Order's intent. Defendant therefore respectfully requests clarification that the Protective Order does not permit such use of Defendant's information.

"[T]his action," as used in the Protective Order, refers to the action reflected by the caption on the order when it was entered, not a hypothetical action involving different parties. It cannot be that the Protective Order was intended to permit use of protected information to add parties to this case given that the order clearly prohibits filing a separate lawsuit against such parties. Had the intent been to permit such use, then the order would have contained a carve-out for litigation. It does not. Instead it says the information "shall not be used for any purpose whatsoever." The Protective Order should not be read in a way that creates loopholes for circumventing its protections. Doing so is inconsistent with its purpose and seeks to undermine the reasonable expectations of protection Defendant had when it provided discovery under the order.

Accordingly, the Court should clarify that the Protective Order does not permit the use of information produced thereunder for any enforcement activity against third parties, including adding such parties to this case.

## II. The Court Should Issue a Protective Order Prohibiting Plaintiff from Taking Any Form of Enforcement Measures Against Defendant's Supplier.

### A. The Legal Standard

On a showing of "good cause," a court may issue an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . specifying terms . . . for the disclosure or discovery [and] requiring that . . . confidential research, development, or commercial information not be revealed or be revealed only in a specified way [.]" Fed. R. Civ. P. 26(c)(1)(B) and (G); *see also Degen v. United States*, 517 U.S. 820, 826 (1996) (referencing a district court's "usual" authority to manage discovery in a civil action, "including the power to enter protective orders limiting discovery as the interests of justice require"). To establish good cause, the movant "must articulate specific facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements." *Galaviz-Zamora v. Brady Farms, Inc.*, 230 F.R.D. 499, 501 (W.D. Mich. 2005) (quoting *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001)).

### B. Good Cause Exists for Entry of the Requested Protective Order.

Good cause plainly exists for entry of the requested protective order. If Plaintiff is permitted to use Defendant's disclosure of its supplier's identity to take enforcement action against the supplier, it would likely have a devastating effect on Defendant – effectively putting Defendant out of business. *See* Tadic Decl. ¶¶ 8-12. If Plaintiff takes enforcement action against Defendant's supplier, there is a high likelihood the supplier will cease providing products to Defendant. *Id.* This case does not involve high-volume sales that would give a supplier – particularly one overseas – sufficient justification to engage in litigation in the U.S. *See id.* ¶ 12.

Plaintiff also has no legitimate need to take enforcement action against the supplier. Defendant's tourniquet cases are exclusive, custom items. *See* Tadic Decl. ¶¶ 4-5. Therefore,

6

there is no practical reason or need to permit Plaintiff to use the information to engage in any enforcement activity against the supplier. The outcome of this case will determine whether the product remains on the market. To the extent Plaintiff has a future need for the information, it should be addressed at that time under then existing circumstances, not now based on the speculative hypotheticals set forth in Plaintiff's brief. The reality under the present circumstances is that there is no valid justification for allowing Plaintiff to use Defendant's confidential information to take enforcement action against Defendant's supplier – and most certainly no justification that outweighs the corresponding harm to Defendant.

It bears noting that, prior to raising this issue on August 10, 2022, Plaintiff showed no interest whatsoever in taking any action with respect to Defendant's supplier. Plaintiff's counsel has known who the supplier is since May 6, 2022, and Plaintiff has had reason to know Defendant had a supplier for as long as it has known of Defendant (since at least April 2020). Plaintiff clearly has no legitimate pressing need to pursue the supplier. Plaintiff's only interest in the supplier is as a means to eliminate Defendant from the market without having to prove its claims on the merits.

Given the extreme harm that could (and is likely to) result from Defendant's proposed course of action, the Court should issue an order prohibiting Plaintiff from taking any enforcement action against Defendant's supplier.

**III.     Good Cause Exists for Maintaining the "Attorneys'-Eyes-Only" Designation of the Identity of Defendant's Current Supplier.**

Plaintiff argues that it should be given access to the identity of Defendant's supplier because, based on the unsupported assertion of Plaintiff's attorneys, (a) Plaintiff would never use a Chinese supplier or a supplier Plaintiff considers to be an infringer; and (b) Defendant's supplier maintains a public website disclosing that it is "a supplier of plastic parts." Neither point justifies

7

allowing Plaintiff to know the name of the name of the supplier or that the supplier provides cases to Defendant.

What Plaintiff's attorneys say Plaintiff would not do today has no bearing on how Plaintiff might use this information in the future. It may be that Plaintiff ultimately decides to switch to an overseas supplier. In that case, Defendant would have no way of knowing whether Plaintiff turned to Defendant's supplier, already aware that the supplier is capable of providing a reliable, quality product. Defendant's confidential information should not be disclosed in a way that risks its use by a competitor to the competitor's benefit.

As for the point regarding the supplier's website, Plaintiff's attorneys would not have known to look at the website but-for Defendant's disclosure of the supplier's identity. Further, being a supplier of "plastic parts" does not equate to being Defendant's supplier of tourniquet cases (or any other tourniquet cases).

Finally, Plaintiff has no legitimate need to know the information apart from its counsel. The only thing that could come from disclosure to Plaintiff would be the misuse of the information – either to the competitive benefit of Plaintiff or as a means of harming Defendant's relationship with its supplier.

For those reasons, the information should remain "attorneys'-eyes-only."

## Conclusion

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiff's motion in all regards with respect to Defendant's current supplier and grant Defendant's cross-motion.

| | |
|---|---|
| Dated: September 8, 2022 | By  s/ Jason B. Lattimore<br>Jason B. Lattimore (NY3976479)<br>The Law Office of<br>JASON B. LATTIMORE, ESQ. LLC<br>55 Madison Avenue, Suite 400<br>Morristown, NJ 07960<br>Telephone: (973) 998-7477<br>Facsimile: (973) 264-1159<br>Jason@LattimoreLaw.com<br><br>*Counsel for Defendant Innovationly* |