UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| Eleven 10 LLC, | Case No. 1:21-cv-2207 |
| Plaintiff, | Judge Donald C. Nugent |
| vs. | |
| Innovationly SK d.o.o., dba Aid & Aim Tactical, | |
| Defendant. | |

**Eleven 10's Reply Brief in Support of Motion to De-Designate**

Eleven 10 moved to de-designate three pieces of information: (i) defendant AAT's[1] original 2019 supplier of accused cases, (ii) the fact that AAT copied the case provided by its 2019 supplier with minor width changes and provided that design to its current supplier, and (iii) the name of AAT's current supplier. (ECF #14 (public), 15 (sealed).)

**I.      AAT now agrees to de-designate two pieces of information.**

AAT now concedes that it never should have marked items (i) and (ii) as AEO, and it agrees that they may be de-designated to CONFIDENTIAL. (*See* Opp. 2 n.1 ("Defendant has no objection to de-designating the identify of Defendant's original supplier and the fact that the product from the original supplier was used as a reference for Defendant's current product."), ECF #16.) Thus, the Court should grant Eleven 10's motion as to those two items as unopposed.

---

[1] "AAT" refers to defendant Innovationly SK d.o.o., dba Aid & Aim Tactical.

{10641672: }

## II.     The Court should de-designate AAT's current supplier.

As to item (iii), AAT argues that it should not be de-designated because any legal action by Eleven 10 against its current supplier—whether by adding it to this action or in a separate action—could spook the supplier and cause it to stop selling the accused cases to AAT. (Opp. 6.) AAT states: "If Plaintiff is permitted to use Defendant's disclosure of its supplier's identity to take enforcement action against the supplier, it would likely have a devastating effect on Defendant …" (*Id.*)

By contending that a protective order can immunize its supplier from legal liability to Eleven 10, AAT misunderstands the purpose and function of protective orders. They are intended to protect privacy interests (such as sensitive medical records) or competition-based business concerns (such as commercial use of competitively-sensitive information in the marketplace). Protective orders are <u>not</u> intended to block a party from using confidential information in Court, only to block uses that are outside of Court. Protective orders may not be used to gain a <u>litigation</u> advantage or to bar a party from exercising its legal rights. On the contrary, protective orders are supposed to facilitate the use of confidential information in Court. AAT's opposition admits that the reason that it designated its supplier's name as "AEO" was to immunize it against any legal action by Eleven 10. (*See* Opp. 6.) This is a misuse of the Protective Order to gain a litigation advantage and should be rejected.

Although AAT has the burden to show such protection is deserved, AAT does not cite a single case that condones a party using a protective order to block the other party from suing someone, let alone on the theory that such a lawsuit might disrupt its supply of

accused infringing product. Again, in intellectual property cases, a protective order is meant to avoid a party using competitive information in the marketplace to gain a commercial advantage. It is not intended to block a party from exercising its legal rights in a courtroom. Nor does it allow a party to use the order to gain a strategic <u>litigation</u> advantage, as AAT attempts here. Indeed, to adopt AAT's view means that Eleven 10 could learn the name of the business manufacturing and selling infringing copies of its tourniquet cases, but would be powerless to take any legal action against it. This would be an unprecedented and unjust use of a protective order.

Moreover, the Protective Order itself allows use of designated information "in "prosecution or defense of this action." (Protective Order ¶¶ 6(a), 6(b), ECF #9.) Adding AAT's supplier as a defendant to "this action" would be within the scope of that permission. Thus, Eleven 10's motion (a) seeks what the Protective Order already allows (*i.e.*, using the supplier's name in "this action"), and (b) seeks to further de-designate the current supplier's name to allow Eleven 10 to use that name in a <u>new or different</u> legal action (which would be done under seal). And the latter requested use, although not in "this action," would still be a judicial use of the information, under judicial supervision, subject to the Protective Order, and consistent with law.

Relying primarily on its argument that the Protective Order should block courtroom use of its supplier name, AAT spends only a few half-hearted paragraphs at the end of its opposition speculating that Eleven 10 "may" use its supplier "in the future" for commercial purposes. (Opp. 7-8.) That argument is not well taken, however, because AAT's own declaration states that its "agreement with the supplier is that the molds are exclusively for

AAT." (Tadic Decl. ¶ 5, ECF #16-1.) Thus, according to AAT's own evidence and arguments, its supplier is contractually barred from selling to Eleven 10. AAT even expresses confidence that its supplier obeys that exclusivity agreement. (*Id.* ("I have no reason to believe Innovationly's supplier has breached our agreement.").) That fact, combined with Eleven 10's "MADE IN THE USA" tenet, and the Protective Order prohibiting Eleven 10 from using that information to buy from AAT's supplier means there is no genuine risk of Eleven 10 buying from this supplier in the future, let alone the substantial risk required to maintain AEO protection under the Protective Order.

Thus, the Court should de-designate the current supplier's name to CONFIDENTIAL and allow Eleven 10 to use the name to enforce its legal rights in this action or in new or different legal actions.

### III. There is no need for "clarification" of the Protective Order.

AAT argues that the Court "should clarify that the Protective Order does not permit use of information designated thereunder for enforcement against third-parties or to add new parties" and cross-moves for clarification. (Opp. 4-5; *see* Cross-Motion, ECF #17.) There is no need for clarification.

First, the Protective Order already explicitly says that information designated as CONFIDENTIAL or ATTORNEYS' EYES ONLY may be used in the "prosecution or defense of <u>this action</u>." (Protective Order ¶¶ 6(a), 6(b), ECF #9 (emphasis added).) Thus, it already permits Eleven 10 to use the supplier's name in "this action," whether that is to seek leave to add it as a second defendant, to issue a subpoena to it, etc. Even if the

Protective Order did not allow that, Paragraph 10 allows the Court to order that such use is allowed. (*Id.* ¶ 10.)

Second, there is no need for "clarification" about whether the Protective Order allows Eleven 10 to use the current supplier's name in a <u>new or different</u> lawsuit because it does not presently allow that. This is why Eleven 10 moved the Court to allow it. (*See* Mot., ECF #14.) Specifically, Eleven 10's motion seeks an order to allow "Eleven 10 to use that name to prosecute legal claims against it in this action <u>or other actions</u> because it is an active infringer of Eleven 10's trade dress rights." (*Id* (emphasis added).) Paragraph 10 of the Protective Order allows the Court to modify the Protective Order in this way. It states: "Nothing in this Order … limits the Court's power to make any orders that may be appropriate with respect to the use and disclosure of any documents produced or used in discovery or at trial." (Protective Order ¶ 10, ECF #9.) So AAT attacking whether the Protective Order, as written, allows use in other legal actions misses the point. Eleven 10 moved the Court to allow that use, regardless of what the Protective Order currently allows.

In sum, the Protective Order allows Eleven 10 to use the name to prosecute "this action," whether it is marked as AEO or CONFIDENTIAL. Because the name is presently marked as AEO, Eleven 10 does not know the supplier and it has been barred from discussing with its counsel what, if any, legal action Eleven 10 might take against that supplier. And, of course, legal counsel cannot take legal action against a party without the client knowing who it is and approving. This is one of the reasons that Eleven 10 moved to de-designate the name to CONFIDENTIAL. Eleven 10 also moved the Court to further de-

designate the name to allow Eleven 10 to use the name of the current supplier (a) in a separate lawsuit against that supplier (if factual or legal circumstances dictate it), or (b) in a separate lawsuit against a different party if the name of that supplier became relevant (for example, if it were the supplier to another accused infringer). The supplier's name would otherwise be treated as "CONFIDENTIAL" under the Protective Order.[2] Again, a Protective Order should never be used to block proper legal uses of information in a courtroom, and Eleven 10 merely seeks an order that would allow judicial uses of the supplier's identify.

## Conclusion

The Court should grant Eleven 10's motion.

Respectfully submitted,

Dated: September 15, 2022

   s/ Matthew J. Cavanagh
Matthew J. Cavanagh (OH 0079522)
McDonald Hopkins LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 | f 216.348.5474
mcavanagh@mcdonaldhopkins.com

*Counsel for Eleven 10 LLC*

---

[2] To this point, any courtroom uses of the supplier's name would be under seal in accordance with the Protective Order so that competitors would not learn the name from the public docket, and the Protective Order would bar Eleven 10 from using the name for business purposes in the marketplace.